IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| THOMAS KOUNAS, | : | |
| Debtor | : | |
| | : | Case No. 1:14-bk-05595 MDF |
| THOMAS KOUNAS, | : | |
| Movant | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM MITCHELL AND | : | |
| CUMBERLAND COUNTY TAX CLAIM | : | |
| BUREAU, | : | |
| Respondents | : | |

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th day of August, 2016, I served the attached *Order* and *Motion for Sale of Real Estate Free and Clear of Liens and Encumbrances* on the parties identified below by depositing a copy of same in the United States mail, first class service, postage prepaid, at Dillsburg, Pennsylvania.

William Mitchell
6090 Parkway E.
Harrisburg, PA 17112

Cumberland County Tax Claim Bureau
One Courthouse Square
Room 106
Carlisle, PA 17013

LAW OFFICE OF LAWRENCE G. FRANK

/s/ Lawrence G. Frank, Esquire

Lawrence G. Frank, Esquire
Attorney ID No.: 15619
100 Aspen Drive
Dillsburg, PA 17019
PH: (717) 234-7455
Fax: (717) 432-9065
lawrencegfrank@gmail.com

Attorney for Debtor

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re: Debtor(s) (name(s) used by the debtor(s) in the last 8 years, including married, maiden, and trade):

Thomas N. Kounas
**Debtor(s)**

Chapter: 13

Case number: 1:14-bk-05595-MDF

Document Number: 84

THOMAS KOUNAS
**Movant(s)**

Matter: Motion for Sale Free and Clear of Liens

vs.

WILLIAM MITCHELL AND CUMBERLAND COUNTY TAX CLAIM BUREAU
**Respondent(s)**

## Order

Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above-referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001-6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

**IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| United States Bankruptcy Court Ronald Reagan Federal Building, Bankruptcy Courtroom (3rd Floor), Third & Walnut Streets, Harrisburg, PA 17101 | Date: September 13, 2016 Time: 09:30 AM |
|---|---|

Dated: August 8, 2016

By the Court,

*(signature)*

Honorable Mary D. France
United States Bankruptcy Judge
By: DDunbar, Deputy Clerk

---

Initial requests for a continuance of hearing ( *L.B.F. 9013-4, Request to Continue Hearing/Trial with Concurrence*) shall be filed with the Court. Requests received by the Court within twenty-four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing telephonically shall be made in accordance with L.B.R. 9074-1(a).

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | Chapter 13 |
| THOMAS KOUNAS, | : | |
|       Debtor | : | |
| | : | Case No. 1:14-bk-05595 MDF |
| THOMAS KOUNAS, | : | |
|       Movant | : | |
| | : | |
| v. | : | |
| | : | |
| WILLIAM MITCHELL AND | : | |
| CUMBERLAND COUNTY TAX CLAIM | : | |
| BUREAU, | : | |
|       Respondents | : | |

## MOTION FOR SALE OF REAL ESTATE FREE AND CLEAR OF LIENS AND ENCUMBRANCES

TO THE HONORABLE MARY D. FRANCE, BANKRUPTCY JUDGE:

COMES NOW, Thomas Kounas, by and through his attorney, Lawrence G. Frank, Esquire, and makes this motion, respectfully stating in support thereof:

1. Movant Thomas Kounas is the Chapter 13 Debtor in the above case with his address at 84 Silver Crown Drive, Mechanicsburg, PA 17050.

2. Respondent William Mitchell is an adult individual with his residence at 6090 Parkway E., Harrisburg, PA 17112.

3. Respondent Cumberland County Tax Claim Bureau has its address at One Courthouse Square, Room 106, Carlisle, PA 17007.

4. This Court has jurisdiction of the matter pursuant to 28 U.S.C. 157 and 28 U.S.C. 1334. It is a core proceeding. Venue is proper in this district.

5. This motion is filed pursuant to §363(f) of the Bankruptcy Code to sell real estate free and clear of liens and encumbrances.

6. Respondent William Mitchell has a mortgage against the real estate at 5-D Conifer Lane, Mechanicsburg, Pennsylvania, proposed to be sold in this motion.

7. Respondent Cumberland County Tax Claim Bureau has liens for unpaid real estate taxes.

8. The Debtor filed a voluntary Chapter 13 petition in this Court on December 3, 2014.

9. At the time of the filing of the voluntary Chapter 13 petition, the Debtor owned real estate known as Lot 5-D Conifer Lane, Mechanicsburg, PA 17050.

10. The Debtor has engaged RSR Realtors, 3 Lemoyne Drive, Lemoyne, PA 17043, to market the above property for the benefit of the Debtor and his creditors.

11. The Debtor has received a full price offer to purchase the real estate.

12. The offer that has been received is in the amount of $59,900.00 from Seherzada Prasko and Adis Prasko, 4184 Cove Court #114, Mechanicsburg, PA 17050. A copy of the standard agreement for sale of vacant land is attached hereto, made a part hereof and labeled Exhibit "A".

13. The agreement is conditioned upon this Court approving same.

14. The sale of the real property is being made to the purchaser in an "arm's length" transaction, and the purchaser and the Debtor are acting in good faith, and as such the purchaser is seeking authority for the benefits and protections of §363(m) of the Bankruptcy Code.

15. The Debtor has analyzed the transaction, consulted with his accountant, and there will be no tax consequences on account of the completion of this transaction by the Debtor.

16. This motion to sell real estate has been filed by the Debtor, because the offer approximates the fair market value.

17. This property is currently vacant and is not necessary to a successful reorganization.

18. The proceeds from the sale of the above real estate will be distributed as follows:

    (a) 6% commission to RSR Realtors and co broker, if any, per prior order of this court;

    (b) 1% transfer tax;

    (c) $2,000.00 to Lawrence G. Frank, Esquire, as the balance of the attorney's fee due and owing in this case;

    (d) past due real estate taxes and present real estate taxes, which are the responsibility of the seller, prorated to the date of settlement;

    (e) past due sewer and water charges, if any, and present sewer and water charges, if any, prorated to the date of settlement;

    (f) any notarization and incidental recording fees associated with the sale of the real estate;

    (g) payment to William Mitchell, Mortgagee, to the extent of any principal and interest due on said mortgage;

    (h) balance after payment of the above to Charles J. DeHart, III, Chapter 13 Trustee, for distribution to creditors.

19. The Debtor requests this Honorable Court to issue a date by which responses, if any, objecting to the private sale of the aforementioned real property may be filed, and grant the requested relief, to wit, to hold the sale of aforementioned real estate at Lot 5-D Conifer Lane, Mechanicsburg, PA 17050, in a private sale between the Debtor and Seherzada Prasko and Adis

Prasko pursuant to the terms and conditions set forth in the attached Exhibit "A" for the sale of vacant land for the sum of $59,900.00, free and clear of all liens and encumbrances.

**WHEREFORE**, the Debtor respectfully requests this Honorable Court to issue a notice to creditors indicating on such the final date for filing answers or objections to the within motion, and following the time set for answers or objections, to enter an order granting leave to sell the aforementioned real estate being Lot 5-D Conifer Lane, Mechanicsburg, Pennsylvania, free and clear of all liens, claims and encumbrances, and to allow the Debtor, Thomas Kounas, to execute any and all documents and papers necessary as set forth in the attached sales agreement between the said parties and to effectuate said sale.

Respectfully submitted,

/s/ Lawrence G. Frank, Esquire

Lawrence G. Frank, Esquire
Attorney ID No.: 15619
100 Aspen Drive
Dillsburg, PA 17019
PH: (717) 234-7455
Fax: (717) 432-9065
lawrencegfrank@gmail.com

Attorney for Debtor



# STANDARD AGREEMENT FOR THE SALE OF VACANT LAND    ASVL
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES
BUYER(S): Adis Prasko + SEHERZANA KosVo

SELLER(S): Tom Kounas

BUYER'S MAILING ADDRESS:

SELLER'S MAILING ADDRESS:

## PROPERTY
☐ See Property Description Addendum

ADDRESS (including postal city) lot 5D Conifer Lane Mechanicsburg, Pa
ZIP 17050 ,
in the municipality of Silver Spring , County of Cumberland ,
in the School District of Cumberland Valley , in the Commonwealth of Pennsylvania.
Tax ID #(s): _____ and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date; Control #): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Buyer is not represented by a broker)

| Broker (Company) RSR Realtors | Licensee(s) (Name) Angela Moyer |
|---|---|
| Company License # RB043231P | State License # RS301135 |
| Company Address 3 Lemoyne Drive, Lemoyne, Pa 17043 | Direct Phone(s) |
| | Cell Phone(s) (717) 599-0076 |
| Company Phone (717) 763-1212 | Email amoyer@rsrrealtors.com |
| Company Fax (717) 763-1656 | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Buyer Agent (all company licensees represent Buyer) |
| ☐ Buyer Agent (Broker represents Buyer only) | ☒ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER
☐ No Business Relationship (Seller is not represented by a broker)

| Broker (Company) RSR Realtors | Licensee(s) (Name) Angela Moyer & Rick Heinbaugh |
|---|---|
| Company License # RB043231P | State License # RS301135 |
| Company Address 3 Lemoyne Drive, Lemoyne, Pa 17043 | Direct Phone(s) |
| | Cell Phone(s) (717) 599-0076 |
| Company Phone (717) 763-1212 | Email amoyer@rsrrealtors.com |
| Company Fax (717) 763-1656 | Licensee(s) is (check only one): |
| Broker is (check only one): | ☐ Seller Agent (all company licensees represent Seller) |
| ☐ Seller Agent (Broker represents Seller only) | ☒ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller) |
| ☒ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY
A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.
By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: AP / SP    ASVL Page 1 of 13    Seller Initials: /

Pennsylvania Association of REALTORS®    COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016
2/16
RSR REALTORS, LLC, 3 Lemoyne Drive Lemoyne, PA 17043    Phone: 717-599-0076    Fax: 717-763-1656    conifer lane
Angela Moyer    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

1. **By this Agreement,** dated May 26, 2016 ,
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
2. **PURCHASE PRICE AND DEPOSITS (1-16)**
   (A) Purchase Price $ 59,900.00
   ( Fifty-Nine Thousand, Nine Hundred
   U.S. Dollars), to be paid by Buyer as follows:
   1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
      if not included with this Agreement: $ 500.00
   2. Additional Deposit within _____ days of the Execution Date: $ _____
   3. _____ $ _____
   Remaining balance will be paid at settlement.
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 DAYS of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
   (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.
3. **SELLER ASSIST (If Applicable) (2-12)**
   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.
4. **SETTLEMENT AND POSSESSION (1-16)**
   (A) Settlement Date is July 29, 2016 , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be pro-rated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
      1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
      2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
5. **DATES/TIME IS OF THE ESSENCE (2-12)**
   (A) Written acceptance of all parties will be on or before: May 31, 2016
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: AP /SP     ASVL Page 2 of 13     Seller Initials: ___/___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     conifer lane

Case 1:14-bk-05595-MDF   Doc 84   Filed 08/06/16   Entered 08/06/16 15:24:14   Desc
Case 1:14-bk-05595-MDF   Main Document   Doc 86   Filed 08/11/16   Page 6 of 18   Entered 08/11/16 09:52:41   Desc
Main Document   Page 8 of 20

62  6. **ZONING (1-16)**
63     Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable)
64     is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any
65     deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
66     Zoning Classification, as set forth in the local zoning ordinance: _____
67  7. **FIXTURES AND PERSONAL PROPERTY (5-01)**
68     (A) INCLUDED in this sale are all existing items permanently installed in the Property, free of liens. Also included: _____
69     _____
70     (B) The following items are LEASED (not owned by Seller): _____
71     _____
72     (C) EXCLUDED fixtures and items: _____
73     _____
74  8. **MORTGAGE CONTINGENCY (1-16)**
75     ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
76        may include an appraisal contingency.
77     ☒ ELECTED.
78     (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $35,000.00 | Loan Amount $_____ |
| Minimum Term __5__ years | Minimum Term ____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For: | For: |
| ☒ Land acquisition only | ☐ Land acquisition only |
| ☐ Land acquisition and construction | ☐ Land acquisition and construction |
| ☐ Other | ☐ Other |
| Loan-To-Value (LTV) ratio not to exceed ____% | Loan-To-Value (LTV) ratio not to exceed ____% |
| Mortgage lender **cornerstone** | Mortgage lender _____ |
| Interest rate __3.000__ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of __3.375__ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed ____% (0% if not specified) of the mortgage loan. | Interest rate ____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of ____ %. Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed ____% (0% if not specified) of the mortgage loan. |

97     (B) Mortgage Commitment Date: **July 15, 2016**
98         Upon receiving a mortgage commitment(s), Buyer will promptly deliver a copy of the commitment(s) to Seller.
99     (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV
100        may be necessary to qualify for certain loans, or buyers maybe be required to pay additional fees if the LTV exceeds a specific level.
101        The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised
102        value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower
103        than the Purchase Price and/or market price of the property.
104    (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
105        the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
106        Buyer will do so at least __15__ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
107        by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage
108        lender(s) to make the above mortgage term(s) available to Buyer.
109    (E) Within ____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application
110        (including payment for and ordering of credit reports without delay, at the time required by lender(s)) for the mortgage terms and
111        to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice.
112        Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mort-
113        gage loan process.
114    (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or
115        employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
116        ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
117        reject, or refuse to approve or issue, a mortgage loan commitment.
118    (G) 1. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate this
119           Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment to
120           Seller. Until Seller terminates this Agreement, Buyer is obligated to make a good-faith effort to obtain mortgage financing.
121        2. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:
122           a. Does not satisfy the terms of Paragraph 8(A), OR
123           b. Contains any condition not specified in this Agreement (e.g., the Buyer must settle on another property, an appraisal must be

124 Buyer Initials: _AP_/_SP_  ASVL Page 3 of 13  Seller Initials: _PM_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  conifer lane

received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or re-
moved in writing by the mortgage lender(s) within _____7_ DAYS after the Mortgage Commitment Date in Paragraph 8(B), or
any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance,
confirming employment).
3. If this Agreement is terminated pursuant to Paragraphs 8(G)(1) or (2), or the mortgage loan(s) is not obtained for settlement, all
deposit monies will be returned to Buyer according to the terms of Paragraph 27 and this Agreement will be VOID. Buyer will
be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agree-
ment, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for can-
cellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
Appraisal fees and charges paid in advance to mortgage lender(s).
(H) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires a task(s)
to be performed to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within
_____5_____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will comply with the lender's or
insurer's requirements at Seller's expense.
 1. If Seller complies with the lender's or insurer's requirements to the satisfaction of the mortgage lender and/or insurer, Buyer ac-
cepts the Property and agrees to the RELEASE in Paragraph 29 of this Agreement.
 2. If Seller will not comply with the lender's or insurer's requirements, or if Seller fails to respond within the stated time, Buyer
will, within _____5__ DAYS, notify Seller of Buyer's choice to:
   a. Comply with the lender's or insurer's requirements at Buyer's expense, with permission and access to the Property given by
Seller, which will not be unreasonably withheld, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
Paragraph 27 of this Agreement.
If Buyer fails to respond within the time stated in Paragraph 8(H)(2) or fails to terminate this Agreement by written notice
to Seller within that time, Buyer will accept the Property, comply with the lender's or insurer's requirements at Buyer's ex-
pense and agree to the RELEASE in Paragraph 29 of this Agreement.
9. **CHANGE IN BUYER'S FINANCIAL STATUS (1-16)**
In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and lender(s)
to whom the Buyer submitted mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or
a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment
against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability
to purchase.
10. **SELLER REPRESENTATIONS (1-16)**
(A) Status of Water
Seller represents that the Property is served by:
☐ Public Water  ☐ Community Water  ☐ On-site Water  ☒ None  ☐ _____
(B) Status of Sewer
 1. Seller represents that the Property is served by:
  ☐ Public Sewer    ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
  ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)    ☐ Holding Tank (see Sewage Notice 3)
  ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
  ☒ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
  ☐ _____
 2. Notices Pursuant to the Pennsylvania Sewage Facilities Act
Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the
Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
local agency charged with administering the Act will be the municipality where the Property is located or that municipality work-
ing cooperatively with others.
Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions
of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing, con-
structing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre
parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted
and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction
may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water
carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site. Pursuant
to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date
of its installation or December 14, 1995, whichever is later.

Buyer Initials: _AP_ _SP_    ASVL Page 4 of 13    Seller Initials: _PZ_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    conifer lane

Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(C) Seller represents that Seller has no knowledge except as noted in this Agreement that: (1) The Property has been contaminated by any substance in any manner which requires remediation; (2) The Property contains wetlands, a Special Flood Hazard Area, or any other environmentally sensitive areas, development of which is limited or precluded by law; (3) The Property contains asbestos, polychlorinated biphenyls, lead-based paint or any other substance, the removal or disposal of which is subject to any law or regulation; and (4) Any law has been violated in the handling or disposing of any material or waste or the discharge of any material into the soil, air, surface water, or ground water.

(D) Seller agrees to indemnify and to hold Broker harmless from and against all claims, demands, or liabilities, including attorneys fees and court costs, which arise from or are related to the environmental condition or suitability of the Property prior to, during, or after Seller's occupation of the Property including without limitation any condition listed in Paragraph 10(C).

(E) Historic Preservation
Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

(F) Land Use Restrictions
1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
   ☐ Agricultural Area Security Law (Act 43 of 1981; 3 P.S. §901 et seq.)
   ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
   ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
   ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
   ☐ Other _____
2. Notices Regarding Land Use Restrictions
   a. Pennsylvania Right-To-Farm Act: The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
   b. Clean and Green Program: Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.
   c. Open Space Act: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
   d. Conservation Reserve (Enhancement) Program: Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(G) Public and/or Private Assessments
1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments (excluding assessed value) have been made against the Property which remain unpaid, and that no notice by any government or public authority has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

(H) Highway Occupancy Permit
Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation and/or the municipality. It should not be presumed that agricultural and other existing accesses or driveways are permitted.

Buyer Initials: _____ / _____    ASVL Page 5 of 13    Seller Initials: _____ / _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    conifer lane

Case 1:14-bk-05595-MDF    Doc 84    Filed 08/06/16    Entered 08/06/16 15:24:14    Desc
Main Document    Page 9 of 18
Case 1:14-bk-05595-MDF    Doc 86    Filed 08/11/16    Entered 08/11/16 09:52:41    Desc
Main Document    Page 11 of 20

248 **11. WAIVER OF CONTINGENCIES (9-05)**
249 If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental
250 conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's
251 failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer
252 accepts the Property and agrees to the RELEASE in Paragraph 26 of this Agreement.
253 **12. BUYER'S DUE DILIGENCE/INSPECTIONS (1-16)**
254   (A) Rights and Responsibilities
255     1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to sur-
256       veyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
257     2. Buyer may make a pre-settlement walk-through inspection of the Property. Buyer's right to this inspection is not waived by any
258       other provision of this Agreement.
259     3. Buyer and/or anyone on the Property at Buyer's direction or on Buyer's behalf, will leave the Property in the same condition as
260       when they arrived unless otherwise agreed upon by the parties. Buyer bears the risk of restoring or repairing the Property or re-
261       imbursing Seller for any loss of value.
262     4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
263     5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.
264   (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "In-
265     spection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed
266     or otherwise qualified professionals. All inspections shall be performed in a non-invasive manner, unless otherwise agreed in writing.
267     If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph
268     12(D) for Notices Regarding Property & Environmental Inspections)
269   (C) For elected Inspection(s), Buyer will, within the Contingency Period(s) stated in Paragraph 13(A), complete Inspections, obtain any
270     Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written
271     corrective proposal(s) to Seller, according to the terms of Paragraph 13(B).
272       **Property Inspections and Environmental Hazards**
273 Elected, Buyer may have a licensed or otherwise qualified professional conduct an inspection of the Property's water penetration; Waived
274 AP / SP electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental ___/___
275 hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select.
276 (See Notices Regarding Property & Environmental Inspections)
277       **Deeds, Restrictions and Zoning**
278 Elected Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- Waived
279 AP / SP nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the ___/___
280 Property (such as in-law quarters, apartments, home office, day care) is permitted and may elect to make the Agreement
281 contingent upon an anticipated use. Present use: _____
282       **Water Service**
283 Elected, Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise Waived
284 AP / SP qualified water/well testing company. If and as required by the existing inspection company, Seller, at Seller's expense, ___/___
285 will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
286 condition, at Seller's expense, prior to settlement.
287       **Connection to Off-Site Water Source**
288 Elected Buyer may determine the terms of connecting the Property to an off-site water source available through (Name of Service Waived
289 ___/___ Provider): _____ . (See Paragraph 14) AP / SP
290       **On-Lot Sewage (If Applicable)**
291 Elected, Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional inspector. Waived
292 AP / SP If and as required by the existing inspection company, Seller, at Seller's expense, will locate, provide access to, and ___/___
293 empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition, at Seller's
294 expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage In-
295 spection Contingency.
296       **Connection to Off-Site Sewage Disposal System**
297 Elected Buyer may determine whether the terms of connecting the Property to an off-site sewage disposal system through (Name Waived
298 ___/___ of Service Provider): _____ are acceptable to AP / SP
299 Buyer. (See Paragraph 15)
300       **Property and Flood Insurance**
301 Elected, Buyer may determine the insurability of the Property by making application for property and casualty insurance for the Waived
302 AP / SP Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the ___/___
303 insurer to assist in the insurance process. If the Property is located in a flood plain, Buyer may be required to carry
304 flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. Revised
305 flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance
306 for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for
307 flood insurance and possible premium increases.

308 Buyer Initials: AP / SP     ASVL Page 6 of 13    Seller Initials: ___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    conifer lane

|       | Property Boundaries |       |
|-------|---|---|
| Elected | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal description, certainty and location of boundaries and/or quantum of land. Most Sellers have not had the Property surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate. | Waived |
| AP/SP __/__ | | __/__ |
|       | Other |       |
| Elected ___/___ | _____ | Waived ___/___ |

The Inspections elected above do not apply to the following existing conditions and/or items: _____
_____

(D) **Notices Regarding Property & Environmental Inspections**
  1. **Electromagnetic fields:** Electromagnetic Fields (EMFs) occur around all electrical appliances and power lines. Conclusive evidence that EMFs pose health risks does not exist at present, and Pennsylvania has no laws regarding this issue.
  2. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly. Inquiries or requests for more information about hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120.
  3. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer or surveyor to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.

**13. INSPECTION CONTINGENCY (1-16)**
  (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).
  (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer will, within the stated Contingency Period:
    1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 29 of this Agreement, OR
    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement, OR
    3. Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer. The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
      a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period.
        (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by written or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
        (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 29 of this Agreement and the Negotiation Period ends.
      b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:
        (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 29 of this Agreement, OR
        (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement.
      If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.
  (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the stated time, Buyer will notify Seller in writing of Buyer's choice to:
    1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement, OR
    2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement, OR

Buyer Initials: _AP_ _SP_  ASVL Page 7 of 13  Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    conifer lane

3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 29 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within ____5____ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 24 of this Agreement.

If Buyer fails to respond within the time stated in Paragraph 13(c) or fails to terminate this agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement.

## 14. ON-SITE WATER SERVICE APPROVAL CONTINGENCY

☐ NOT APPLICABLE. The Property has an existing water service and Buyer is not seeking approval to install an on-site water system.

☐ WAIVED. Buyer understands and acknowledges there may be no developed water system for the Property and that Buyer has the option to make this Agreement contingent on receiving municipal approval for the installation of an on-site water system. BUYER WAIVES THIS OPTION and agrees to the RELEASE in Paragraph 29 of this Agreement.

☒ ELECTED. Contingency Period: ____30____ days (15 if not specified) from the Execution Date of this Agreement.
  1. Within the Contingency Period, Buyer will make a completed, written application for municipal approval for the installation of an on-site water system from _____ (municipality). Buyer will pay for applications, legal representation, and any other costs associated with the application and approval process.
  2. If the municipality requires the application to be signed by the current owner, Seller agrees to do so.
  3. If final, unappealable approval is not obtained by _____, Buyer will:
     a. Accept the Property and agree to the RELEASE in paragraph 29 of this Agreement, OR
     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement, OR
     c. Enter into a mutually acceptable written agreement with Seller as acceptable to the lender(s), if any.
  If Buyer and Seller do not reach a written agreement before the time for obtaining final approval, and Buyer does not terminate the Agreement of Sale by written notice to Seller within that time, Buyer will accept the Property and agree to the terms of the RELEASE in Paragraph 29 of this Agreement.

## 15. INDIVIDUAL ON-LOT SEWAGE DISPOSAL INSTALLATION CONTINGENCY (1-16)

☐ NOT APPLICABLE. The Property has an existing sewage disposal system.

☐ WAIVED. Seller has provided to Buyer a current Site Investigation and Percolation Test Report on a form approved by the Pennsylvania Department of Environmental Protection. Buyer understands and acknowledges that Buyer is not required to accept the results of the Report provided by Seller and that Buyer has the option to make this Agreement contingent on receiving municipal approval for the installation of an individual on-lot sewage disposal system. BUYER WAIVES THIS OPTION and agrees to the RELEASE in Paragraph 29 of this Agreement.

☒ ELECTED. Contingency Period: ____30____ days (15 if not specified) from the Execution Date of this Agreement.
  1. Within the Contingency Period, ☐ Buyer or ☐ Seller will make a completed, written application for municipal approval for the installation of an individual on-lot sewage disposal system from _____ (municipality). Buyer will pay for applications, legal representation, and any other costs associated with the application and approval process.
  2. If the municipality requires the application to be signed by the current owner, Seller agrees to do so.
  3. If final, unappealable approval is not obtained by _____, Buyer will:
     a. Accept the Property and agree to the the RELEASE in Paragraph 29 of this Agreement, OR
     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement, OR
     c. Enter into a mutually acceptable written agreement with Seller as acceptable to the lender(s), if any.
  If Buyer and Seller do not reach a written agreement before the time for obtaining final approval, and Buyer does not terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the terms of the RELEASE in Paragraph 29 of this Agreement.

## 16. REAL ESTATE TAXES AND ASSESSED VALUE (1-16)

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax. Certain improvements will result in the Property being reassessed and Buyer will receive an interim tax bill for the increased taxes due for the current tax period. This interim tax bill may not be covered by Buyer's tax escrow with the lender, if any.

## 17. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (1-16)

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(G) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within ____5____ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
  1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 29 of this Agreement, OR

Buyer Initials: _AP_ _LP_  ASVL Page 8 of 13  Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com  conifer lane

2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within ___5___ DAYS that Buyer will:
   a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 29 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement.
   If Buyer fails to respond within the time stated in Paragraph 17(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement.
(B) If required by law, within ___30___ DAYS from the Execution Date of this Agreement, but in no case later than ___15___ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
   1. Within ___5___ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:
      a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 29 of this Agreement, OR
      b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within ___5___ DAYS that Buyer will:
         (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR
         (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement.
      If Buyer fails to respond within the time stated in Paragraph 17(B)(1)(b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.
   2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before Settlement Date to make the required repairs/improvements, Buyer may, within ___5___ DAYS, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 27 of this Agreement.
   3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 17(B)(3) will survive settlement.

18. **PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) RESALE NOTICE (2-12)**
   (A) Property is NOT a part of a Planned Community unless checked below.
      ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the Declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in section 5407(a) of the Act.
   (B) **THE FOLLOWING APPLIES TO PROPERTIES THAT ARE PART OF A PLANNED COMMUNITY.**
      1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.
      2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.
      3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 27 of this Agreement.
      4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

19. **TITLES, SURVEYS AND COSTS (1-16)**
   (A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.
   (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to

Buyer Initials: _HF_ _SP_      ASVL Page 9 of 13      Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com      conifer lane

499 release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance
500 policy.
501 (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
502 (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and
503 charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
504 (D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.
505 (E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description
506 of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required
507 by the mortgage lender will be obtained and paid for by Buyer.
508 (F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement
509 Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited
510 to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice
511 of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all
512 liens and encumbrances against the Property.
513 (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
514 specified in Paragraph 19(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer
515 according to the terms of Paragraph 27 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by
516 Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph
517 19(C) Items (1), (2), (3) and in Paragraph 19(E).
518 (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
519 about the status of those rights unless indicated elsewhere in this Agreement.
520 ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.
521 (I) COAL NOTICE (Where Applicable)
522 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
523 THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
524 RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILD-
525 ING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17,
526 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal
527 mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract
528 with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions
529 of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed
530 from Seller which deed will contain the aforesaid provision.
531 (J) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
532 ☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
533 2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee
534 Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the
535 transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge
536 runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed
537 amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer."
538 A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective
539 buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.
540 20. MAINTENANCE AND RISK OF LOSS (1-16)
541 (A) Seller will maintain the Property (including but not limited to grounds, fixtures, appliances, and personal property) specifically listed
542 in this Agreement in its present condition, normal wear and tear excepted.
543 (B) If any part of the Property included in the sale is damaged or fails before settlement, Seller will:
544 1. Repair or replace that part of the Property before settlement, OR
545 2. Provide prompt written notice to Buyer of Seller's decision to:
546 a. Credit Buyer at settlement for the fair market value of the damaged or failed part of the Property, as acceptable to the mortgage
547 lender, if any, OR
548 b. Not repair or replace the damaged or failed part of the Property, and not credit Buyer at settlement for the fair market value
549 of the damaged or failed part of the Property.
550 3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller fails
551 to notify Buyer of Seller's choice, Buyer will notify Seller in writing within _____5_ DAYS or before Settlement Date, whichever is
552 earlier, that Buyer will:
553 a. Accept the Property and agree to the RELEASE in Paragraph 29 of this Agreement, OR
554 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
555 Paragraph 27 of this Agreement.
556 If Buyer fails to respond within the time stated in Paragraph 20(B)(3) or fails to terminate this Agreement by written
557 notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 29 of this
558 Agreement.

559 Buyer Initials: _AP_ _SP_    ASVL Page 10 of 13    Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com            conifer lane

Case 1:14-bk-05595-MDF   Doc 84   Filed 08/06/16   Entered 08/06/16 15:24:14   Desc
                                  Main Document   Page 14 of 18
Case 1:14-bk-05595-MDF   Doc 86   Filed 08/11/16   Entered 08/11/16 09:52:41   Desc
                                  Main Document   Page 16 of 20

560  (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
561      replaced prior to settlement, Buyer will:
562      1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
563      2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Para-
564         graph 27 of this Agreement.
565 21. RECORDING (9-05)
566     This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
567     causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
568 22. ASSIGNMENT (2-12)
569     This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable,
570     on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise
571     stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
572 23. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)
573     (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
574         laws of the Commonwealth of Pennsylvania.
575     (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party
576         submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
577 24. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-16)
578     The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
579     Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
580     real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing
581     U.S. real property interests (the transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to with-
582     hold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of
583     gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must
584     find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may
585     be held liable for the tax.
586 25. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (1-16)
587     The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
588     for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal police
589     department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular property, or to
590     check the information on the Pennsylvania State Police website at www.pameganslaw.state.pa.us.
591 26. REPRESENTATIONS (2-12)
592     (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees,
593         employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This
594         Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, represen-
595         tations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered,
596         amended, changed or modified except in writing executed by the parties.
597     (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property
598         specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
599         IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers,
600         their licensees, employees, officers or partners have not made an independent examination or determination of the structural sound-
601         ness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing
602         in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.
603     (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
604     (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
605 27. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-16)
606     (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
607         deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 27(B), and this Agreement will be VOID. Ter-
608         mination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
609     (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to de-
610         termine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
611         1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
612            agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
613         2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
614            Broker how to distribute some or all of the deposit monies.
615         3. According to the terms of a final order of court.
616         4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
617            deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 27(C))
618     (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not spec-
619         ified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof), or following termination of the Agree-
620         ment, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request,
621         distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of lit-

622 Buyer Initials: _____  ASVL Page 11 of 13  Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    conifer lane

igation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.
- (D) Buyer and Seller agree that Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 27 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
- (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
  1. Fail to make any additional payments as specified in Paragraph 2, OR
  2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
  3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
- (F) Unless otherwise checked in Paragraph 27(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
  1. On account of purchase price, OR
  2. As monies to be applied to Seller's damages, OR
  3. As liquidated damages for such default.
- (G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**
- (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 27(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.
- (I) Brokers and licensees are not responsible for unpaid deposits.

## 28. MEDIATION (2-12)
Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding (see Notice Regarding Mediation). Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

## 29. RELEASE (1-16)
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all obligations, claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

## 30. REAL ESTATE RECOVERY FUND (9-05)
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

## 31. COMMUNICATIONS WITH BUYER AND/OR SELLER (2-12)
Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to Paragraph 18. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

## 32. HEADINGS (1-16)
The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

Case 1:14-bk-05595-MDF    Doc 84    Filed 08/06/16    Entered 08/06/16 15:24:14    Desc
                          Main Document    Page 16 of 18
Case 1:14-bk-05595-MDF    Doc 86    Filed 08/11/16    Entered 08/11/16 09:52:41    Desc
                          Main Document    Page 18 of 20

681 33. SPECIAL CLAUSES (2-12)
682    (A) The following are part of this Agreement if checked:
683       ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
684       ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
685       ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
686       ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
687       ☐ Short Sale Addendum to Agreement of Sale (PAR Form SHS)
688       ☐ Appraisal Contingency Addendum (PAR Form ACA)
689       ☐ _____
690       ☐ _____
691       ☐ _____
692    (B) Additional Terms: The agreement of sale is contingent upon the satisfactory subdivision
693        and perk and probe.

710 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

711 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
712 together shall constitute one and the same Agreement of the Parties.

713 NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT. Parties to this transaction are advised
714 to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

715 Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures
716 of all parties, constitutes acceptance by the parties.

717 _AP_/_SP_ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 PA. Code §35.336.

718 _AP_/_SP_ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

719 _AP_/_SP_ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
720 before signing this Agreement.

721 BUYER _[signature]_ DATE _5-26-16_
      Adis Prasko
722 BUYER _[signature]_ DATE _5-26-2016_
      SEHERZADA PRASKO
723 BUYER _____ DATE _____

724 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
725 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

726 SELLER _[signature]_ DATE _5/31/16_
      Tom Kounas
727 SELLER _____ DATE _____
728 SELLER _____ DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com   conifer lane

Case 1:14-bk-05595-MDF   Doc 84   Filed 08/06/16   Entered 08/06/16 15:24:14   Desc
Main Document   Page 17 of 18
Case 1:14-bk-05595-MDF   Doc 86   Filed 08/11/16   Entered 08/11/16 09:52:41   Desc
Main Document   Page 19 of 20

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: <br> THOMAS KOUNAS, <br>     Debtor <br><br> THOMAS KOUNAS, <br>     Movant <br><br> v. <br><br> WILLIAM MITCHELL AND <br> CUMBERLAND COUNTY TAX CLAIM <br> BUREAU, <br>     Respondents | : Chapter 13 <br> : <br> : <br> : Case No. 1:14-bk-05595 MDF <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of August, 2016, I, Lawrence G. Frank, electronically filed the foregoing *Motion for Sale of Real Estate Free and Clear of Liens and Encumbrances* with the Clerk of the Bankruptcy Court by using the CM/ECF system which sent notification of such filing to the following filing user at the email address below:

Charles J. DeHart, III (Trustee)    TWecf@pamd13trustee.com

                                                        LAW OFFICE OF LAWRENCE G. FRANK

                                                        /s/ Lawrence G. Frank, Esquire

                                                        Lawrence G. Frank, Esquire
                                                        Attorney ID No.: 15619
                                                        100 Aspen Drive
                                                        Dillsburg, PA 17019
                                                        PH: (717) 234-7455
                                                        Fax: (717) 432-9065
                                                        lawrencegfrank@gmail.com

                                                        Attorney for Debtor

Case 1:14-bk-05595-MDF    Doc 84    Filed 08/06/16    Entered 08/06/16 15:24:14    Desc
Main Document    Page 18 of 18
Case 1:14-bk-05595-MDF    Doc 86    Filed 08/11/16    Entered 08/11/16 09:52:41    Desc
Main Document    Page 20 of 20